IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ELBERT SMITH, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:21-cv-00457 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| SERGEANT MICHAEL PAULEY, ) | |
| *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |         United States District Judge |
| Defendants. ) | |

Plaintiff Elbert Smith ("Plaintiff"), a Virginia inmate proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 against: Correctional Officers Sgt. Michael Pauley, S. Smith, and Cuykendall;[1] Warden Karl Manis; and Regional Administrator Marcus Elam (collectively "Defendants"). Plaintiff alleges that, after being transferred from Wallens Ridge State Prison ("WRSP"), Defendants failed to provide adequate due process in connection with the destruction of his personal property. This matter is now before the court on Defendants' motion to dismiss for failure to state a claim. For the reasons discussed below, the court will grant Defendants' motion and dismiss Plaintiff's complaint.

## I.   BACKGROUND

The facts are taken from Plaintiff's *pro se* complaint and attachments and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In Plaintiff's complaint, he alleges that on June 12, 2019, WRSP's property officers—Sgt. Pauley, S. Smith, and Cuykendall—packed up six boxes of his personal items that were to

---

[1] Plaintiff only identifies Officer Cuykendall by his last name. (*See generally*, Compl. [ECF No. 1].)

be transferred with him to Dillwyn Correctional Center ("DWCC"). (Compl. ¶¶ 11, 17.) Once the boxes were inventoried and accounted for, former property officer Harrison[2] informed Plaintiff that only one box would be shipped with him and that he would have to pay to ship the remaining five. (*See id.* ¶ 12.) Harrison provided Plaintiff with a blank Money Withdrawal Form and told Plaintiff that his remaining five boxes would be shipped once Plaintiff's Money Withdrawal Form was processed to pay for the shipping. (*Id.*) Plaintiff alleges that he completed the Money Withdrawal Form and was transferred to DWCC on June 13, 2019, where he remained for six days until he was transferred to Greensville Correctional Center ("GCC"). (*Id.* ¶¶ 14, 15.) Once Plaintiff arrived at GCC, he claims he wrote "multiple letters and various complaints" concerning the whereabouts of his five unshipped boxes, but never received his boxes.[3] (*Id.* ¶ 16.)

On November 22, 2019, five months after his transfer, Plaintiff was served a Special Status Inventory Form by Officer Ingram[4]—GCC's property officer—informing him that Pauley, Smith, and Cuykendall had destroyed his five boxes on November 5, 2019. (*Id.* ¶ 17; Pl.'s Ex.'s I & II [ECF No. 1-1].) The next day, Plaintiff filed an Informal Complaint; Plaintiff eventually received a response.[5] (*Id.* ¶ 18.) Plaintiff then filed a Regular Grievance on December 20, 2019. (*Id.*) On February 11, 2020, Warden Manis responded to Plaintiff's

---

[2] Property Officer Harrison is not a party to this action.

[3] Prison grievance responses indicate that VDOC staff never received any information from Plaintiff regarding the shipment of his boxes. (*See* Pl.'s Ex.'s A & D [ECF No. 1-1].)

[4] Property Officer Ingram is not a party to this action.

[5] Plaintiff's Informal Complaint was responded to on January 14, 2020, which was 27 days after the assigned response date. (*Id.* ¶ 19; Compl. Ex.'s. A & B [ECF No. 1-1].)

Regular Grievance and deemed Plaintiff's complaints to be "unfounded."[6] (*Id.* ¶ 21; Pl.'s Ex. D [ECF No. 1-1].) On appeal, Regional Administrator Elam upheld Manis's decision. (*Id.* ¶ 22; Pl.'s Ex. E [ECF No. 1-1].)

Plaintiff contends that Defendants' actions deprived him of his Fourteenth Amendment rights and requests $30,000 in compensatory damages and $45,000 in punitive damages. (*See id.* ¶¶ 23, 24.) In his Complaint, Plaintiff asserts five claims: that Defendants Pauley, Smith, and Cuykendall violated his Fourteenth Amendment right to procedural due process by "maliciously and sadistically" destroying his property without providing written notice and an opportunity to appeal their decision prior to the destruction of his property (Count I, II, & III); that Manis deprived Plaintiff of his due process rights by "encourage[ing]" violations of Virginia Department of Corrections ("VDOC") operating procedures and acted with deliberate indifference by failing to investigate officer misconduct (Count IV); and that Elam deprived Plaintiff of his Fourteenth Amendment right to procedural due process through deliberate indifference when he maliciously "stood-by" so Manis could intentionally violate VDOC procedure without affording Plaintiff an opportunity to complete the appeals process (Count V). (*Id.*)

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[6] Manis's Level I response stated that, even though Plaintiff completed a Money Withdrawal Form, Plaintiff was notified that he lacked sufficient funds for mailing. (Compl. Ex. D [ECF No. 1-1].) Manis added that officers notified Plaintiff at least twice regarding the funds owed and told him that, if they were not paid, his property would be destroyed. (*Id.*)

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678–679.

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples

requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### III. ANALYSIS

Plaintiff filed his Complaint alleging violations under 42 U.S.C. § 1983. Section 1983 creates a private cause of action against anyone who,

> under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983. To state a cause of action under § 1983, a plaintiff must allege facts that, if true, would show that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that the deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

**A. Defendants Pauley, Smith, and Cuykendall**

Plaintiff alleges that Defendants Pauley, Smith, and Cuykendall violated his procedural due process rights by "maliciously and sadistically" destroying his property and "intentionally" failing to provide written notice or an opportunity to appeal the decision prior to its destruction. (Compl. ¶ 23.)

The Due Process Clause of the Fourteenth Amendment provides that no state shall

"deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Importantly, "the deprivation by state action of a constitutionally protected interest in . . . property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 80 (4th Cir. 2016) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (cleaned up)).

In this case, despite Plaintiff's contentions, it is well settled that allegations of prison officials depriving an inmate of his property, whether intentionally or negligently, do not state a due process violation "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). Because Plaintiff possessed adequate post-deprivation remedies under the Virginia Tort Claims Act ("VTCA"), *see* Virginia Code § 8.01–195.3, he cannot prevail in a constitutional claim for any property loss in this case.

In *Parratt v. Taylor*, the Supreme Court held that a state official's random and unauthorized negligent act which caused the loss of a prisoner's personal property was not a violation of due process because the state provided a meaningful post-deprivation remedy. 451 U.S. at 541. Similarly, in *Hudson v. Palmer*, the Supreme Court extended *Parratt's* holding to the intentional destruction of a prisoner's property by a random and unauthorized act, so long as the state provides a meaningful post-deprivation remedy. 468 U.S. at 533. Therefore, "*Parratt* and *Hudson* established the rule that a government official's random and unauthorized

act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful post[-]deprivation remedy." *Yates v. Jamison*, 782 F.2d 1182, 1184–85 (4th Cir. 1986) (cleaned up).

Taking Plaintiff's claims as true, Pauley, Smith, and Cuykendall "maliciously," "sadistically," and "intentionally" violated VDOC Operating Procedure[7] by destroying his property on November 5, 2019. (Compl. ¶¶ 17, 23; Pl.'s Opp. to Mot. to Dismiss at 4 [ECF No. 22-1].) This type of arbitrary action by state employees, therefore, falls squarely within the ambit of the *Hudson*-line of cases. As such, Plaintiff fails to state a procedural due process claim if other adequate, post-deprivation remedies were available to him with respect to the intentional destruction of his property. *Hudson*, 468 U.S. at 533.

Here, Plaintiff had at least two post-deprivation remedies available to him. First, by his own admission, Plaintiff utilized the VDOC's Inmate Grievance Procedure to challenge the deprivation of his personal property. (Compl. ¶ 19–22; Pl.'s Ex.'s A, C, D & E.) *See Ballance v. Clarke*, No. 7:15CV00645, 2017 WL 1169747, at *7 (W.D. Va. Mar. 28, 2017) (explaining that grievance procedures provided an adequate post-deprivation remedy). Secondly, the VTCA was available to Plaintiff as a means of seeking compensation for his destroyed property.[8] *See* Va. Code Ann. § 8.01–195.3 ("[T]he Commonwealth shall be liable for . . . loss of property . . . . caused by the negligent or wrongful act or omission of any employee while acting within the scope of his employment . . . ."). Indeed, the Fourth Circuit has held that the VTCA and Virginia

---

[7] VDOC Operating Procedure provides that, after property is stored for an offender for up to 30 days, it may be seized and destroyed after the offender is provided a notification of the seizure and the right to appeal. *See* VDOC Operating Procedure 802.1(VII)(D)(6) & (VII)(E)(2).

[8] Plaintiff does not contest that other legal remedies were available to him.

tort law provide adequate post-deprivation remedies for torts committed by state employees. *See Wadhams v. Procunier,* 772 F.2d 75, 77-78 (4th Cir. 1985); *Ballance v. Young,* 130 F. Supp. 2d 762, 767 (W.D. Va. 2000). Accordingly, insofar as Plaintiff had adequate state remedies, the intentional and arbitrary destruction of his personal property does not state a claim for a violation of Plaintiff's procedural due process rights.[9] *Hudson*, 468 U.S. at 533; *see Henderson v. Virginia*, Civil Action No. 7:07-cv-00266, 2008 U.S. Dist. LEXIS 5230, at *34-35 n.7 (W.D. Va. Jan. 23, 2008).

Similarly, to the extent that Plaintiff faults Pauley, Smith, and Cuykendall for violating prison regulations or other state laws, § 1983 is not the proper legal remedy. "[I]t is well settled that violations of state law cannot provide the basis for a due process claim." *Weller v. Dep't of Soc. Servs. for City of Balt.,* 901 F.2d 387, 392 (4th Cir.1990). Similarly, a state entity's failure to abide by its internal regulations typically does not rise to the level of a federal due process violation and is otherwise not actionable under § 1983. *Riccio v. Cnty. of Fairfax, Va.,* 907 F.2d 1459, 1469 (4th Cir.1990). Therefore, Plaintiff's claims that Pauley, Smith, and Cuykendall failed to comply with or properly execute prison regulations regarding the disposition of his property do not provide a basis for a claim under § 1983. *See Jehovah v. Clarke*, No. 7:14CV00538, 2015 WL 2195059, at *4–5 (W.D. Va. May 11, 2015), *aff'd*, 625 F. App'x 219 (4th Cir. 2015) (holding that plaintiff failed to state a claim under § 1983 by alleging that prison

---

[9] Moreover, Plaintiff is not claiming that his property was destroyed pursuant to a prison policy *but in contravention* of one, so the court need not address the slightly different analysis for a deprivation pursuant to policy, which can sometimes require pre-deprivation procedures. *See, e.g.*, *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (explaining that a violation occurs only if the procedural protections in the policy are inadequate to ensure that deprivations are lawful); *Ivey v. Yeager*, 139 F.3d 890 (4th Cir. 1998) ("Insofar as [plaintiff] asserts that [defendant] ignored the process by having predetermined the disposition, he is asserting that [defendant's] conduct was random and unauthorized for which there were adequate post-deprivation remedies.").

officials did not follow their procedural policy regarding transportation, mailing, classification, and disposition of his property).

Lastly, although not explicitly raised in Plaintiff's complaint, to the extent he complains of destroyed legal documents, Plaintiff fails to state a claim for denial of access to the courts. To bring such a claim, a plaintiff must plead facts showing that he has suffered an actual injury as a result of the denial of access. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). Specifically, the "plaintiff must identify a nonfrivolous, arguable underlying claim . . . that must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (cleaned up) (quoting *Lewis*, 518 U.S. at 353 n.3)).

Here, aside from mentioning that legal documents were destroyed, Plaintiff does not allege that he was denied access to the courts because of it, or identify any claims that his destroyed documents may support. Because Plaintiff does not allege that he has been hindered in pursuing a claim—let alone a nonfrivolous one—his complaint fails to state a claim for denial of access to courts. *See e.g., Monroe v. Beard*, 536 F.3d 198, 206 (3rd Cir. 2008) (holding that the plaintiffs failed to state an access-to-courts claim where they "alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous").

Accordingly, Defendants' motion to dismiss is granted with respect to the claims against Pauley, Smith, and Cuykendall.

## B. Defendants Manis and Elam

Plaintiff utilizes a slew of buzzwords to describe how Manis and Elam allegedly violated

his due process rights in Counts IV and V.[10] But the only references to Manis or Elam in Plaintiff's complaint concern their involvement in the prison grievance process.[11] (*See* Compl. ¶¶ 21, 22.) As such, the court understands Plaintiff's argument to be that his rights were violated because Manis and Elam ultimately ruled against him in the grievance appeal process. But this does not amount to a procedural due process claim that is actionable under 42 U.S.C. § 1983. And even if the court interprets Plaintiff's complaint as asserting claims for failure to investigate or supervisory liability, those claims are likewise insufficient to state a constitutional violation.

As explained above, Plaintiff cannot pursue claims under § 1983 that officials violated prison regulations or that they returned adverse grievance responses. Violations of state law by state officials do not provide a basis for a constitutional claim under § 1983. *Weller*, 901 F.2d at 392. Moreover, inmates do not have a constitutionally protected right to a grievance procedure. *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991). It follows, then, that an insufficient or unavailable grievance process does not rise

---

[10] Count IV of Plaintiff's complaint asserts that Manis "deprived Plaintiff [] of his property interest without due process when his wanton deliberate indifference to defendants Pauley, Smith, and Cuykendall's illegal actions and intentionally failed to investigate and correct their misconduct and maliciously encouraged them to violate the operating procedure 802.1—offender property policy without serving written notice or providing an opportunity to appeal or make the necessary arrangements to have property mailed to [Plaintiff] before destroying it." (Compl. ¶ 23.)

As to Count V, Plaintiff claims that Elam "deprived Plaintiff [] of his property interest without due process, when he maliciously stood by witnessing, the sadistical (*sic*) and illegal actions of Defendants Pauley, Smith, and Cuykendall, so Defendant Manis could intentionally abrogate operating procedure 802.1 without affording [Plaintiff] an opportunity to complete the appeal process before disposing his personal property, while Defendant Elam remained wantonly deliberate indifferent on whether [Plaintiff] is reimbursed for destroyed property, placed in the possession or under the control of Department of Corrections employees." *Id.*

[11] Outside of the text of Counts IV and V, the only mentions of Manis and Elam are, that, "[o]n February 11, 2020, Manis deemed [Plaintiff's] grievance unfounded," and "[o]n March 5, 2020, Elam upheld the decision . . . of Manis." (Compl. ¶¶ 21, 22) (cleaned up).

to a constitutional violation, and allegations of insufficient or unavailable grievance processes do not state a claim for violation of the Due Process Clause. *See Coward v. Clarke*, No. 7:20CV00702, 2022 WL 971987, at *3 (W.D. Va. Mar. 30, 2022) ("Accusations of improper denials of access to grievances or appeals, or of improper grievance responses . . . do not give rise to any constitutional claim actionable under § 1983."); *see also Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process."); *Guinn v. Crumpler*, No. 7:18-CV-00274, 2020 WL 1666301, at *6 (W.D. Va. Apr. 3, 2020) (citing cases finding no right to grievance procedure access and denying liability for unsatisfactory grievance responses).

Here, Manis and Elam are alleged, at most, to have been the recipients of an after-the-fact grievance complaining about an alleged violation of Plaintiff's due process rights. (Compl. ¶¶ 21, 22; Ex.'s D & E.) The fact that they issued adverse rulings does not, without more, assert a constitutional claim. *See e.g., DePaola v. Ray*, No. 7:12CV00139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013), *report and recommendation adopted as modified*, No. 7:12-CV-00139, 2013 WL 4453422 (W.D. Va. Aug. 16, 2013) (holding that "a superior's after-the-fact denial of a grievance falls far short of establishing § 1983 liability."); *Crawley v. Parsons*, No. 7:15-CV-00647, 2017 WL 2983899, at *6 (W.D. Va. July 12, 2017) (finding that "to the extent that plaintiff's claim against [prison officials] relies on their responses to his after-the-fact grievances, it is unavailing. Plaintiff has no constitutional right to participate in grievance proceedings."); *Brown v. Va. Dep't of Corrs.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va.

Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal.").

Similarly, to the extent that Plaintiff is attempting to assert a constitutional claim against Manis or Elam for failure to investigate the actions of Pauley, Smith, and Cuykendall, that claim also fails. "Claims that officials failed to investigate an inmate's grievances or appeals cannot be brought under § 1983." *Lambert v. Middle River Reg'l Jail*, No. 7:20cv00001, 2020 U.S. Dist. LEXIS 70349, at n.1 (W.D. Va. Apr. 15, 2020) (citing *Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006)); *see also Underwood v. Beavers*, No. 7:15cv513, 2016 U.S. Dist. LEXIS 134119, at *7 (W.D. Va. Sept. 29, 2016) (holding that an alleged failure to investigate "did not contribute in any way" to an alleged constitutional violation, and, "even assuming that prison policy required an investigation, state officers' violations of prison policies do not equate with constitutional violations, and thus are not actionable under § 1983"); *Sweat v. Rennick*, No. 9:11-2908, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012) ("Plaintiff's complaint that this Defendant has not properly investigated his claims . . . fails to set forth a claim for a violation of a constitutional right."); *Lewis v. Williams*, Nos. 05-13, 05-51, 05-52, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006) ("[T]he failure to investigate a grievance does not raise a constitutional issue.").

Lastly, to the extent that the Complaint can be construed as asserting a claim for supervisory liability against Manis or Elam, Plaintiff's claim fails. In order to succeed on a §1983 claim for supervisory liability, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was

> so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226–27 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791 799 (4th Cir. 1994) (cleaned up)).

Regarding the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (quoting *Shaw*, 13 F.3d at 799). "As to the second element, a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (quoting *Shaw*, 13 F.3d at 799) (cleaned up). "Finally, as to the third element, proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Id.* (quoting *Shaw*, 13 F.3d at 799) (cleaned up).

Here, Plaintiff's allegations fail to state a claim for supervisory liability as to Manis or Elam. The complaint does not allege how Manis or Elam had any actual or constructive knowledge that Pauley, Smith, and Cuykendall were engaging in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to Plaintiff—let alone that Manis or Elam permitted it. Manis and Elam are merely alleged to have been the recipients of Plaintiff's after-the-fact grievance complaints that alleged constitutional violations. This is insufficient to state a claim for supervisory liability. *Davis v. York Cnty. Bd. of Supervisors*, No. 4:17CV39, 2017 WL 6397833, at *3 (E.D. Va. Sept. 7, 2017), *aff'd*, 707 F. App'x 182 (4th Cir. 2017) (holding

that after-the-fact knowledge is insufficient to state a claim for supervisory liability under § 1983.)

The complaint is also devoid of any contention that Pauley, Smith, and Cuykendall's conduct was any more than an aberration, let alone "widespread," or that they had neglected their duties on "several occasions." *Shaw*, 13 F.3d at 799. Indeed, Plaintiff does not point to a single instance (outside of his own circumstances) where inmate property was impermissibly destroyed. Absent allegations regarding a widespread abuse, Plaintiff cannot sufficiently plead that Manis or Elam were deliberately indifferent to widespread abuse.

Lastly, Plaintiff does not explain how Manis or Elam's actions were causally related to the deprivation of his property. As discussed above, Manis and Elam were merely the recipients of Plaintiff's after-the-fact grievances, which they both responded to—albeit not in the way Plaintiff would have desired. Plaintiff has, therefore, failed to state a claim for supervisory liability against Manis or Elam.

Accordingly, Defendants' motion to dismiss is granted with respect to the claims against Manis and Elam.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's complaint fails to state a claim against Defendants. Accordingly, Defendants' motion to dismiss all counts will be granted without prejudice.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 30th day of January, 2023.

- 15 -

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE